UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID TYLER HILL,<br><br>              Plaintiff,<br><br>   v.<br><br>BRENT REINKE, SHANE EVANS, JANE DOE I, JANE DOE II, CORIZON (a/k/a CORRECTIONAL MEDICAL SERVICES), RANDY BLADES, VICKI HANSEN, SHANNON BLACKBURN, RICHARD CRAIG, and CLAUDIA LAKE,<br><br>              Defendants. | Case No. 3:13-cv-00038-BLW<br><br>**INITIAL REVIEW ORDER** |

      The Complaint of Plaintiff David Tyler Hill was conditionally filed by the Clerk of Court on January 22, 2013, due to his status as an inmate and his request for in forma pauperis status. The Court is required to review the Complaint to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A.

      Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

**INITIAL REVIEW ORDER 1**

## REVIEW OF COMPLAINT

This is Plaintiff's second lawsuit regarding conditions of confinement in the Idaho Department of Correction's Mental Health Unit (MHU), a converted unit located in the Idaho Maximum Security Institution (IMSI). He is also pursuing similar claims arising from his placement in the MHU in March 2009 against Defendants Heather Dunham and Aris Duncan (his alleged primary caretakers in the MHU) in Case No. 1:11-cv-101-REB, *Hill v. Wamble-Fisher*.

**1.     Standard of Law**

The Court is required to review complaints filed in forma pauperis or those filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. 28 U.S.C. §§ 1915, 1915A. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

A complaint fails to state a claim for relief under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**INITIAL REVIEW ORDER  2**

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted).

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a valid claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

A prison official is not liable for damages in his or her individual capacity under § 1983 unless he or she personally participated in the alleged constitutional violations. *Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant."). A prison official "may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting

**INITIAL REVIEW ORDER  3**

*Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). This causal connection "can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207-08 (internal quotation marks, citation, and alterations omitted). A plaintiff may also name as defendants officials who have direct responsibility in the area in which the plaintiff seeks relief. *Ex Parte Young*, 209 U.S. 123, 157-58 (1908); *Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 (9th Cir. 1999).

      To succeed on his claims against Corizon as an entity, Plaintiffs must meet the test articulated in *Monell v. Department of Social Services*, 436 U.S. 658, 690-94 (1978); *see Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities). Under *Monell*, the requisite elements of a § 1983 claim against a municipality or private entity performing a state function are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting

**INITIAL REVIEW ORDER  4**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

All claims must have arisen within the two-year statute of limitations period prior to the filing of the original Complaint. *See* Idaho Code § 5-219; *Wilson v. Garcia*, 471 U.S. 261, 278-80 (1985), *superseded by statute on other grounds as stated in Pony v. County of Los Angeles*, 433 F.3d 1138, 1143 (9th Cir. 2006). The statute of limitations is tolled while the inmate exhausts administrative grievance procedures pursuant to the Prison Litigation Reform Act (PLRA). *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005).

2.   **Factual Allegations**

Plaintiff alleges that he was placed in the MHU twice: in March 2009, and in April 2011. (Claims arising from March 2009 are beyond the statute of limitations period for this lawsuit, are currently the subject of another civil rights action, *see* Case No. 1:11-cv-00101-REB, *Hill v. Wamble-Fisher*, and cannot be pursued in this lawsuit.) Plaintiff alleges that he was confined to the MHU from April 11 to May 27, 2011. Defendant Richard Craig ordered the 2011 transfer. (Compl., Dkt. 3, ¶67.) Plaintiff was not afforded

**INITIAL REVIEW ORDER  5**

a hearing before he was placed in the MHU. (*Id.* ¶¶19, 66, 69.)

Plaintiff alleges he is receiving inadequate out-of-cell time, and that he is confined to a 12 by 12 foot cell for 23 hours per day during the week, and 24 hours per day on weekends. (*Id.* ¶39.) The cells are dirty, unsanitary, and extremely cold. (*Id.* ¶¶43, 51.) Plaintiff states that he is permitted to shower only 3 times per week. (*Id.* ¶44.)

Plaintiff alleges that the conditions in the suicide watch cells are unconstitutional in that they have bright lighting for 24 hours per day and that inmates are stripped nude, given a smock suit or suicide blanket, and sometimes paper underwear. (*Id.* ¶¶47, 52-53.) Plaintiff also claims that the MHU clinicians punish the inmates "by holding them on suicide watch and close observation for extraordinary amounts of time, usually weeks and sometimes months at a time." (*Id.* ¶60.)

In addition to his more specific claims, Plaintiff contends that the behavioral modification program utilized in C-Block Tier 3 of the MHU, the "level" system, is unconstitutional. Attached to the Complaint is a description of the "levels" program. (*See id.* at Ex. A, Dkt. 3-1.) The levels system begins with extremely limited privileges. Each week the inmate's level is reevaluated, and the inmate either earns or loses certain enumerated privileges as a consequences of his conduct. Plaintiff alleges that "advancement through the levels is at clinical staffs' [sic] discretion . . . and the patient is given no opportunity to present his side of the story." (*Id*. ¶33.) Inmates in the MHU "are

**INITIAL REVIEW ORDER  6**

never told why they are being held back on the level system which makes it almost impossible for the mentally-ill patient to understand and correct his behavior." (*Id*. ¶34.)

While confined in the MHU, Plaintiff was not allowed "access to programming, counseling, or other related mental health services" except for the mandatory levels system. (*Id.* ¶¶27-28.)

3.    **Eighth Amendment Claims**

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, Plaintiff must show that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). He must also show that Defendants were deliberately indifferent to his needs. "[D]eliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. To exhibit deliberate indifference, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

**INITIAL REVIEW ORDER  7**

### A.     Conditions of Confinement Claims

At the lowest levels of the MHU's behavioral modification program, participants are deprived of many of life's basic necessities, including clothing, exercise, and proper furnishings. (Compl. ¶¶38-53.) In emergency circumstances, the short-term deprivation of certain basic necessities of life is justified. *See Anderson v. County of Kern*, 45 F.3d 1310, 1315 (9th Cir. 1995) ("[I]n an emergency, prison officials are not culpable when they put an inmate who imminently threatens or attempts suicide temporarily in a place where he cannot hurt himself."). However, the allegations in Plaintiff's Complaint appear to cross the line from a permissible response to a prisoner's mental health needs to an Eighth Amendment violation.

As the Court noted in Plaintiff's previous case regarding the MHU, Plaintiff's 2009 transfer to the MHU was in response to Plaintiff's suicide attempt. No inference of deliberate indifference could be drawn because the deprivations to which Plaintiff was subjected "were imposed in order to ensure Plaintiff's safety." (Case No. 1:11-cv-00101-REB, *Hill v. Wamble-Fisher*, Dkt. 7 at 17.) In this case, however, it does not appear from the face of the Complaint that Defendants were responding to a mental health emergency when they confined Plaintiff in the MHU in April 2011.

Moreover, in 2009 Plaintiff was confined to the MHU for only 30 days. In 2011, however, he was there for over six weeks. Although at first blush a difference of two

**INITIAL REVIEW ORDER 8**

weeks or so might not seem significant, the Court concludes, at this early stage of the proceedings, that the length of time Plaintiff was confined to the severely restrictive MHU and the lack of any apparent emergency circumstances to justify that confinement are sufficient to state viable Eighth Amendment claims for the allegedly unconstitutional conditions of confinement.

### B. Mental Health Care Claims

The protections of the Eighth Amendment include a prisoner's right to minimally adequate medical care. A conclusion that a defendant acted with deliberate indifference to a prisoner's medical needs requires that the plaintiff show both "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish an Eighth Amendment claim, *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989), and prisoners do not have a right to a specific treatment, *see Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of

treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Under the Eighth Amendment, "a convicted prisoner is entitled to psychological or psychiatric care for serious mental or emotional illness." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979). There is "no underlying distinction between the right to medical care for physical ills and its psychological or psychiatric counterpart." *Id.* (internal quotation marks omitted). The Eighth Amendment claim fails if the need is not serious, or if the defendants have not exhibited deliberate indifference in providing diagnostic services and treatment.

Plaintiff's allegation that he was not provided any "programming, counseling, or other related mental health services" suffices to state an Eighth Amendment claim for failure to provide adequate mental health care. (Compl. ¶ 28.) The Complaint's description of the levels system raises a plausible inference that the system does not actually constitute mental health treatment, as at times inmates are placed in a certain level (or not advanced to the next level) as a form of punishment rather than treatment. Further, even if this behavioral modification program is considered a form of mental health treatment, Plaintiff has sufficiently alleged that subjecting him to the mandatory,

**INITIAL REVIEW ORDER  10**

severely restrictive levels system—implemented for an extended period of time and apparently not in response to a mental health emergency—was medically unacceptable under the circumstances. *See Toguchi*, 391 F.3d at 1058. Plaintiff may thus proceed on his Eighth amendment claims for inadequate mental health care.

4.      **Fourteenth Amendment Claims**

Plaintiff alleges that his right to due process was violated by the failure to provide a hearing prior to his transfer to the MHU. He also claims that being forced to participate in the mandatory behavioral modification program and having to take psychotropic drugs on a coerced-compliance basis also violate due process.

Only claims involving a "liberty interest" are actionable under the Due Process Clause of the Fourteenth Amendment. Because liberty interests are "generally limited to freedom from restraint," a prisoner asserting a due process claim must show that he has suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandin*, the Supreme Court held that, in order for a district court to determine whether there is such a liberty interest, it must analyze three factors: (1) whether disciplinary segregation was essentially the same as discretionary forms of segregation; (2) whether a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment"; and (3) whether the length of the

**INITIAL REVIEW ORDER  11**

plaintiff's sentence was affected. *Id*. at 486-87.

In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the United States Supreme Court underscored the severity of the conditions required to meet the liberty interest test:

> For an inmate placed in OSP, almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context. It follows that respondents have a liberty interest in avoiding assignment to OSP.

*Id*. at 223-24 (citations omitted).

Plaintiff's allegations that he was transferred to and confined in the MHU, subjected to severely restrictive conditions of confinement, and forced to participate in the behavioral modification program and to take medication for over six weeks are sufficient to allege a liberty interest. *See also Vitek v. Jones*, 445 U.S. 480, 494 (1980) ("[T]he stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior

**INITIAL REVIEW ORDER  12**

modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections."). "Segregation of a prisoner without a prior hearing may violate due process if the postponement of procedural protections is not justified by apprehended emergency conditions." *Hughes v. Rowe*, 449 U.S. 5, 11 (1980). It is not clear that any emergency existed to justify subjecting Plaintiff to the conditions and requirements of the MHU without affording him a hearing. Therefore, Plaintiff may proceed on his due process claims.

5.   **Doe Defendants**

Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the true identity of the Doe Defendants comes to light during discovery, Plaintiff may move to amend his Complaint to add those defendants.

## PLAINTIFF'S REQUEST FOR CLASS CERTIFICATION

Plaintiff attempts to bring his case "Individually And On Behalf Of Others Similarly Situated." (Compl., p.1.) Courts have broad discretion whether to certify a case as a class action. *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975). The Court has reviewed the issue and determined that class certification is not necessary or

appropriate in this case at this time, based on the factors set forth in Federal Rule of Civil Procedure 23.

Rule 23(a) sets forth four prerequisites for a class action lawsuit: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." In addition, a class cannot be certified unless the case meets one of the following standards:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to

**INITIAL REVIEW ORDER  14**

>class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>>(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>>(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>>(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>>(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

The injunctive relief sought by Plaintiff would generally apply to all inmates in the MHU, whether or not the case proceeds as an individual or class action lawsuit. Where a suit attacks the constitutionality of a policy, procedure, or practice by a state actor, there is generally little need for the suit to proceed as a class action, since it can be assumed that, if the court declares the policy, procedure, or practice unconstitutional, then the responsible government officials will discontinue enforcement of it. *See Lent v. Lopes*, 107 F.R.D. 62, 62-63 (D. Conn. 1985); *Giles v. Prattville*, 556 F. Supp. 612, 615 (D. Ala.

**INITIAL REVIEW ORDER  15**

1983); *Chacon v. Zahorka*, 663 F. Supp. 90, 92 (D. Colo. 1987). In addition, there is no indication that other inmates wish to join his action.

For these reasons, Plaintiff has not shown that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Given the scope of this case, there would be little benefit to justify the practical difficulties of managing a class action lawsuit. Furthermore, the fact that some claims might be unexhausted would make the management of a class action impracticable. Therefore, the Court will not certify this case as a class action at this time.

## CONCLUSION

This Order does not guarantee that any of Plaintiff's claims will be successful; it merely finds that some are colorable, meaning that the claims will not be summarily dismissed at this stage. Defendants may still file a motion to dismiss or a motion for summary judgment if the facts and law support such a motion. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims. It is Plaintiff's burden to thoroughly set forth the legal and factual basis for each claim.

## ORDER

**IT IS ORDERED:**

1. Defendants shall be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as

provided by Fed. R. Civ. P. 4(d) and returning it to the Court within thirty (30) days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion shall be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court shall forward a copy of the Complaint (Dkt. 3), a copy of this Order, and a Waiver of Service of Summons to the following counsel:

    a.    Mark Kubinski, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706, on behalf of the Idaho Department of Correction Defendants; and

    b.    John Burke, Elam & Burke, PA, P.O. Box 1539, Boise, ID 83701, on behalf of the Corizon Defendants.

2.    Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, indicating which individuals for whom service will not be waived.

3.    If Plaintiff receives a notice from Defendants indicating that service will not

**INITIAL REVIEW ORDER  17**

be waived for an entity or certain individuals, Plaintiff shall have an additional ninety (90) days from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them will be dismissed without prejudice without further notice.

4. The parties shall not engage in any discovery until an answer has been filed. Within thirty (30) days after an answer has been filed, the parties shall provide each other with the following voluntary disclosures: all relevant information pertaining to the claims and defenses in this case, including the names of individuals likely to have discoverable information, along with the subject of the information, as well as any relevant documents in their possession, in a redacted form if necessary for security or privilege purposes; and, if necessary, they shall provide a security/privilege log sufficiently describing any undisclosed relevant documents which are alleged to be subject to nondisclosure. Any party may request that the Court conduct an in camera review of withheld documents or information. If, instead of filing an answer, Defendants file a motion to dismiss under Federal Rule of Civil Procedure 12, disclosures and discovery shall be automatically stayed with the exception that Defendants shall submit with any motion to dismiss for failure to exhaust administrative remedies a copy

**INITIAL REVIEW ORDER  18**

       of all grievance-related forms and correspondence, including a copy of original handwritten forms submitted by Plaintiff that either fall within the relevant time period or that otherwise relate to the subject matter of a claim.

5. Each party shall ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party shall sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made. The Court will not consider *ex parte* requests unless a motion may be heard *ex parte* according to the rules and the motion is clearly identified as requesting an *ex parte* order, pursuant to Local Rules of Civil Practice before the United States District Court for the District of Idaho 7.2. ("*Ex parte*" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

6. All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion,

**INITIAL REVIEW ORDER  19**

served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

7. Discovery shall not be filed with the Clerk of Court, but shall be exchanged between parties, only, as provided for in the Federal Rules of Civil Procedure. Motions to compel discovery shall not be filed unless the parties have first attempted to work out their disagreements between themselves.

8. No party may have more than three pending motions before the Court at one time, and no party may file a motion on a subject matter if he or she has another motion on the same subject matter currently pending before the Court.

9. Plaintiff shall notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

DATED: **June 11, 2013**

Honorable B. Lynn Winmill
Chief U. S. District Judge

INITIAL REVIEW ORDER  20